# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN SCRAP, INC., a California corporation, | 1:08-cv-1060 AWI GSA |
| | SCHEDULING ORDER (Fed. R. Civ. P. 16) |
| Plaintiff, | Discovery Deadlines:<br>    Initial Disclosures: October 29, 2008<br>    Non-Expert: January 16, 2009<br>    Expert Disclosures : January 30, 2009<br>    Supp. Expert Discl : February 15, 2009<br>    Expert Discovery : March 14, 2009 |
| v. | |
| | Motion Deadlines:<br>    Non-Dispositive: April 4, 2009<br>    Dispositive: May 2, 2009 |
| COLMAR USA, INC., A New York Corporation, and DOES 1-100, inclusive | Settlement Conference:<br>    March 9, 2009 at 10:30 a.m.<br>    Courtroom 10 (GSA), 6th Floor |
| Defendants. | Pre-Trial Conference:<br>    June 19, 2009 at 8:30 a.m.<br>    Courtroom 2 (AWI), 8th Floor |
| | Trial:   July 21, 2009 at 8:30 a.m.<br>    Courtroom 2 (AWI), 8th Floor<br>    4 Day<br>    Jury Trial |

## I.    Date of Scheduling Conference

October 15, 2008.

///

1

II.     **Appearances of Counsel**

Thomas Scott Belden appeared telephonically on behalf of Plaintiff Western Scrap, Inc. ("Plaintiff").

Michael Lucy appeared telephonically on behalf of Defendant Sun Life Assurance Company of Canada ("Defendant").

III.    **The Pleadings**

**1. Factual Background**

*A. Western's Contentions*

The Complaint alleges that in November 2007, Western Scrap, Inc., (hereinafter, "Western") ordered a Model 403 Scrap Processor, with various accessories (herinafter, "Equipment"), from Colmar USA, Inc.  Colmar delivered the Equipment FOB Long Beach and it was received by Western in January 2008.  The purchase price for the Equipment was $260,000.00 (the "Purchase Price"), with $52,000.00 down and the remainder financed through Wells Fargo Bank.  The Sales Order was executed by Western on or about December 3, 2007.  In addition to the down payment, Western has paid $104,100.96 in payments and sales taxes and is liable to Wells Fargo Bank for the remainder of the balance of the Purchase Price.  Western began using the Equipment in its operations in January 2008.

Western contends that almost from the moment that the Equipment was installed, it was unreliable and regularly failed to operate.  Western attempted to secure the assistance of Colmar to examine and repair the Equipment so that it could be operated by Western.  On repeated occasions through July 2008, Western contacted Colmar for assistance in repairing or replacing the Equipment.  Colmar failed to satisfactorily respond to those requests and, in many instances, failed completely to respond at all.  The Equipment is inoperable, for its intended use or any use at all.  Western believes that as a result of its allegations there has been a failure of consideration such that Western is entitled to rescission and restitution of all of the monies paid by it for the Equipment.  Western has been forced to obtain legal counsel to assist it in this matter.  Therefore,

2

1   Western is also entitled to its attorneys fees incurred in this matter.

2       *B.    Colmar's Contentions:*

3       Colmar denies all of these allegations in its Answer to the Complaint.  Colmar contends

4   that the transaction is subject to the "Terms & Conditions" agreed to by Western, a copy of which

5   are attached to Western's Complaint.  The "Terms & Conditions" expressly provide that the

6   Agreement, and all matters arising out of or relating to this Agreement, shall be governed by the

7   laws of the State of New York… and shall be deemed to be executed in Buffalo, New York…" and

8   [a]ny legal action or proceeding relating to this Agreement shall be instituted solely in a state or

9   federal court in Buffalo, New York.  Company and Customer agree to submit to the jurisdiction of,

10  and agree that the venue is proper in, these courts in any such legal action or proceeding."

11  Colmar further contends that the "Disclaimers and Warranty" contained in the "Terms and

12  Conditions" apply to the transaction.  In sum, the "Disclaimers and Warranty" provide for a 12

13  month warranty period and that Colmar's "sole obligation under the foregoing warranty is, at

14  Colmar's] option, to repair, replace or correct any such defect that was present at the time of

15  delivery, or to remove the Equipment and to refund the purchase price to Customer."  Colmar has

16  offered to repair the Equipment, but Western has refused.

17      The "Disclaimers and Warranty" further provide that "any repairs under this warranty must

18  be conducted by an authorized Company representative…"  Colmar has offered to repair the

19  Equipment, but Western has refused.  Rather, Western has apparently had the Equipment repaired

20  by service personnel not authorized by Colmar.  The "Limitation of Liability" contained in the

21  Terms and Conditions" apply to the transaction.  In sum, the "Limitation of Liability" provides

22  that in no event shall Colmar be liable for any indirect, incidental, punitive, special or

23  consequential damages including damages for loss of profits or revenue and that in no event shall

24  Colmar's liability exceed the purchase price.  Western is not entitled to the damages it seeks in this

25  matter.

26  //

27

28                                      3

**2.      Relief Sought**

Western seeks the following relief:

(a)      the Sales Order be rescinded;

(b)      the Court order restitution of the Purchase Price, plus interest accruing as of November 30, 2007, and sales taxes paid on the Equipment;

(c)      the award of consequential damages including, but not limited to, various costs incurred by Western in attempting to remedy the defects in the Equipment, lost profits, and lost capacity, pursuant to California Civil Code Section 1692;

(d)      the recovery of costs and expenses incurred in connection with prosecuting this action, including reasonable attorney's fees;

(e)      pre-judgment and post-judgment interest to the extent and in the amount permitted by law;

(f)      recovery of general damages in excess of $260,000.00, plus the sales taxes paid on the Equipment;

(g)      consequential and incidental damages in an amount according to proof at trial; and

(h)      for such other and further relief as the Court may deem just and proper.

Colmar seeks the following relief :

(a)      Western should take nothing by way of its Complaint;

(b)      judgment should be entered in favor of Colmar;

(c)      an award for costs of suit and reasonable attorney's fees; and

(d)      any other relief to which they may be justly entitled.

**3. Orders Regarding Amendments to the Pleadings**

Any amendments to the pleadings should be filed no later than November 14, 2008.

//

//

**IV. Factual Summary**

    *A.    Uncontested Facts:*

(a)    On or about  November 30, 2007, Colmar forwarded to Western a Sales Order relative to the sale of a Model #403 Scrap Processor with Grapple and Magnet (the "Equipment") by Colmar, for delivery FOB Long Beach, California.

(b)    The purchase price for the Equipment was $260,000.00 (the "Purchase Price"), with $52,000.00 down and the remainder financed through Wells Fargo Bank.

(c)    The Sales Order was executed by Western on or about December 3, 2007.

(d)    Colmar delivered the Equipment FOB Long Beach

(e)    The Equipment was received by Western in or about January 2008.

(f)    Western placed the Equipment into operation upon its receipt and installation in January 2008.

*B.  Contested Facts:*

(a)    On or before November 30, 2007, Western received a copy of the "Terms and Conditions" attached to its Complaint

(b)    In addition to the down payment, as of the filing of the Complaint Western has paid $104,100.96 in payments and sales taxes and is liable to Wells Fargo Bank for the remainder of the balance of the Purchase Price.  Western continues to make payments.

(c)    Colmar has received 100% of the Purchase Price, plus additional payments of sales taxes.

(d)    Almost from the moment that the Equipment was installed, it was unreliable and regularly completely failed to operate:

    1.    On numerous occasions the Equipment overheated and had to be shut down;

    2.    The Equipment spontaneously began leaking fluids from locations where Western could not inspect or repair;

3.      The Equipment's oil transferred to the front differential;

4.      The Equipment's left boom cylinder valve did not work;

5.      The Equipment's fittings were welded together and irreparable;

6.      The Equipment's fuel sending unit was inoperable;

7.      The Equipment failed to operate;

8.      The Equipment's engine has seized; and

9.      The Equipment suffered from other problems including lack of primer, improper painting, and other latent material issues.

(e)      The above described defects caused numerous disruptions in Western's business, causing lost profits and excess costs.

(f)      Western attempted to secure the assistance of Colmar to examine and repair the Equipment so that it could be operated by Western.

(g)      On repeated occasions through July 2008, Western contacted Colmar for assistance in repairing or replacing the Equipment.

(h)      Colmar failed to satisfactorily respond to the requests, and, in many instances, failed completely to respond at all.

(i)      The Equipment is inoperable for its intended use, or any use at all.

(j)      On February 18, 2008, Western faxed George Boggs, Colmar Regional Sales Manager, advising Colmar of three (3) issues that had already been repaired by Western's mechanic.

(k)      On February 19, 2008, Colmar responded to Western's letter dated February 18, 2008, addressing the issues raised therein.

(l)      On February 19, 2008, Western acknowledged and thanked Colmar for its response letter.

(m)      On July 3, 2008, Western  faxed George Boggs, Colmar Regional Sales Manager, advising Colmar of leaks springing from the Equipment and "wondering" if there is anything

that can be done.

(n)     On July 8, 2008, George Boggs, Colmar Regional Sales Manager, faxed Western advising that a Colmar Technician will be contacting Western to review and discuss the issues and offer a solution.

(o)     On July 21, 2008, George Boggs, Colmar Regional Sales Manager, faxed Western advising that the Colmar Technician is scheduled to arrive at Western on July 23.

(p)     On July 24, 2008, Western faxed Colmar advising that technician Chris Fortini was on site on July 23, 2008, and that he signed Mr. Fortini's assessment letter only as an acknowledgement.  Western further advised that Western does not authorize Colmar to repair the Equipment.

(q)     Colmar timely and appropriately responded to and addressed Western's concerns.

(r)     The Equipment is repairable.

**V.     Summary of Undisputed and Disputed Legal Issues:**

Colmar claims that New York is the proper venue and state law governing the transaction based on the "Terms and Conditions" page that was forwarded to Western in conjunction with the Sales Order.  A copy of that Terms and Conditions page is attached as Exhibit "B" to the Complaint.  Colmar further claims that the "Disclaimers and Warranty" and "Limitation of :Liability" contained in the "Terms and Conditions" are applicable, as set forth above in Section 1.  Western asserts that at the time of the execution of the Sales Order, Western did not assent to the Terms and Conditions and does not believe such terms were incorporated into the agreement between the parties and disagrees that the venue and applicable state law should be New York.  Colmar will bring a motion to transfer venue. There is no dispute concerning the Court's jurisdiction to hear this matter based on diversity of citizenship and the amount in controversy.

## VI.    Consent to the Magistrate Judge

Pursuant to 28 U.S.C. § 636(c), the parties have not consented in writing to conduct all further proceedings in this case, including trial, before the Honorable Gary S. Austin, U.S. Magistrate Judge.

## VII.    Discovery Plan and Cut-Off Date

The parties shall exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26 on or before **October 29, 2008.**   The parties are ordered to complete all discovery pertaining to non-experts on or before **January 16, 2009.**

The parties are directed to disclose all expert witnesses, in writing, on or before **January 30, 2009**.  The parties also shall disclose all supplemental experts on or before **February 15, 2009**.  The written designation of experts shall **be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.** Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

The parties are directed to complete all expert discovery on or before **March 14, 2009.** The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions.  Experts must be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony.

## IV.    Pre-Trial Motion Schedule

All Non-Dispositive Pre-Trial Motions, including any discovery motions, shall be filed no later than **April 4, 2009.**  Non-dispositive motions are heard on Fridays at 9:30 a.m., before the Honorable Gary S. Austin, United States Magistrate Judge in Courtroom 10. **Counsel must comply with Local Rule 37-251 with respect to discovery disputes or the**

1   **motion will be denied without prejudice and dropped from calendar.**

2          In scheduling such motions, the Magistrate Judge may grant applications for an order

3   shortening time pursuant to Local Rule 6-142(d).  However, if a party does not obtain an

4   order shortening time, the notice of motion *must* comply with Local Rule 37-251.

5   Counsel or pro se parties may appear and argue non-dispositive motions by telephone,

6   providing a written request to so appear is made to the Magistrate Judge's Courtroom Clerk

7   no later than five (5) court days before the noticed hearing date.  In the event that more than

8   one party requests to appear by telephone then it shall be the obligation of the moving

9   part(ies) to arrange and originate a conference call to the court.

10          All Dispositive Pre-Trial Motions shall be filed no later than **May 2, 2009**, and heard

11   in Courtroom 2 before the Honorable Anthony W. Ishii, United States District Court Judge.

12   In scheduling such motions, the parties shall comply with **Local Rules 78-230 and 56-260**.

13   **V.      Pre-Trial Conference Date**

14          The pre-trial conference will be held on **June 19, 2009, at 8:30 a.m.** in Courtroom 2

15   before the Honorable Anthony W. Ishii.  The parties are ordered to file a **Joint Pretrial**

16   **Statement pursuant to Local Rule 16-281(a)(2).** The parties are further directed to submit a

17   digital copy of their pretrial statement in Word Perfect X3[1] format, directly to Judge Ishii's

18   chambers by emailing it to awiorders@caed.uscourts.gov.   The parties' attention is directed

19   to **Rules 16-281 and 16-282 of the Local Rules** of Practice for the Eastern District of

20   California, as to the obligations of counsel in preparing for the pre-trial conference.  The

21   Court will insist upon strict compliance with those rules.

22   **VI.      Trial Date**

23          The trial will be held on **July 21, 2009**, at 8:30 a.m. in Courtroom 2 before the

24   Honorable Anthony W. Ishii, United States District Court Judge.

25   ─────────────

26          [1] If WordPerfect X3 is not available to the parties then the latest version of WordPerfect
or any other word processing program in general use for IBM compatible personal computers is
27   acceptable.

28                                          9

1    A.    This is a jury trial.

2    B.    Parties' Estimate of Trial Time: 4 days.

3    The parties' attention is directed to Local Rules of Practice for the Eastern District of

4 California, Rule 16-285, for preparation of trial briefs.

5 **VII.   Settlement Conference**

6    A Settlement Conference is scheduled for **March 9, 2009**, at 10:30 a.m. in Courtroom

7 10 before the Honorable Gary S. Austin, United States Magistrate Judge.  Unless otherwise

8 permitted in advance by the Court, **the attorneys who will try the case** shall appear at the

9 Settlement Conference **with the parties** and the person or persons having **full authority** to

10 negotiate and settle the case **on any terms**[2] at the conference.

11 The Court has indicated that in-house counsel for Defendant need not appear in person at the

12 Settlement Conference, but shall be available by telephone for purposes of the Settlement

13 Conference.

14    CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT

15 At least five (5) court days prior to the Settlement Conference the parties shall submit,

16 directly to the Magistrate Judge's chambers by email to gsaorders@caed.uscourts.gov, a

17 Confidential Settlement Conference Statement.  The statement **should not be filed** with the

18 Clerk of the Court **nor served on any other party**, although the parties may file a Notice of

19 Lodging of Settlement Conference Statement.  Each statement shall be clearly marked

20 "confidential" with the date and time of the Settlement Conference indicated prominently

21 thereon.  The parties are urged to request the return of their statements if settlement is not

22

23    [2] Insurance carriers, business organizations, and governmental bodies or agencies whose
24 settlement agreements are subject to approval by legislative bodies, executive committees, boards
of directors or the like shall be represented by a person or persons who occupy high executive
25 positions in the party organization and who will be directly involved in the process of approval of
any settlement offers or agreements.  To the extent possible, the representative shall have the
26 authority, if he or she deems it appropriate, to settle the action on terms consistent with the
27 opposing party's most recent demand.

28    10

achieved and if such a request is not made the Court will dispose of the statement.

The Confidential Settlement Conference Statement shall include the following:

> A.  A brief statement of the facts of the case.

> B.  A brief statement of the claims and defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

> C.  A summary of the proceedings to date.

> D.  An estimate of the cost and time to be expended for further discovery, pretrial and trial.

> E.  The relief sought.

> F.  The party's position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

Should the parties desire an additional settlement conference, they will jointly request one of the court, and one will be arranged.  In making such request, the parties are directed to notify the court as to whether or not they desire the undersigned to conduct the settlement conference or to arrange for one before another judicial officer.

**VIII.   Request for Bifurcation, Appointment of Special Master, or other Techniques to Shorten Trial**

The parties have not requested bifurcation.

**IX.   Related Matters Pending**

The parties have not identified any related matters.

**X.   Compliance with Federal Procedure**

The parties are expected to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and to keep abreast of any amendments thereto.  The Court must insist upon compliance with these Rules

if it is to efficiently handle its increasing case load and sanctions will be imposed for failure
to follow the Rules as provided in both the Federal Rules of Civil Procedure and the Local
Rules of Practice for the Eastern District of California.

**XI.**     **Effect of this Order**

The foregoing order represents the best estimate of the Court and the parties as to the
agenda most suitable to dispose of this case.  The trial date reserved is specifically reserved
for this case.  If the parties determine at any time that the schedule outlined in this order
cannot be met, counsel are ordered to notify the Court immediately of that fact so that
adjustments may be made, either by stipulation or by subsequent status conference.
Stipulations extending the deadlines contained herein will not be considered unless they are
accompanied by affidavits or declarations, and where appropriate attached exhibits, which
establish good cause for granting the relief requested.  Failure to comply with this order may
result in the imposition of sanctions.


 IT IS SO ORDERED.

**Dated:** __October 22, 2008__         _____ /s/ **Gary S. Austin** _____
                                          UNITED STATES MAGISTRATE JUDGE